UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA D. CHAVEZ and RENE CHAVEZ, individually and as the Successors-in-Interest of CHRISTIAN CHAVEZ, Deceased,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF KERN, TOMMY J. ROBBINS, JEREMY STORAR, AND DOES 1 TO 100,<br><br>        Defendants. | Case No.: 1:12-cv-01004 - LJO - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF RECORDS PURSUANT TO THE SUBPOENA DUCES TECUM<br><br>(Doc. 23) |

The County of Kern, Tommy Robins and Jeremy Storar ("Defendants") seek to compel Harbor-UCLA Medical Center to produce documents subpoenaed pursuant to Rule 45 of the Federal Rules of Civil Procedure.[1] (Doc. 23). Plaintiffs Maria Chavez and Rene Chavez filed their opposition to the motion on June 25, 2013 (Doc. 24), to which Defendants filed a reply on July 1, 2013 (Doc. 26). On July 9, the Court heard the oral arguments of the parties. For the following reasons, Defendants' motion to compel is **GRANTED**.

---

[1] Plaintiffs argue it is unclear whether this motion was served on Harbor-UCLA Medical Center. Indeed, review of the proof of service filed in connection with this motion on the very date this motion was filed, indicates the document served was, "Defendants' re-notice of taking deposition of Osvaldo Chavez." (Doc. 23 at 8) However, Defendants assert that the error was not in serving the documents but only in the title placed on the proof of service. (Doc. 26 at 3) They have provided an amended proof of service dated July 1, 2013. (Doc. 26-2 at 3).

1

## I.     Background

On January 23, 2013, Kern County Sheriff's Officers Robins and Storar responded to a call at the Buttonwillow Recreation Center in Kern County. (Doc. 23 at 2; Doc. 24 at 2). Christian Chavez, his social worker, and his grandmother were in the parking lot. *Id.* Plaintiffs allege the social worker called for the County crisis intervention team "to respond and initiate a Welfare Institutions Code § 5150 hold on her client." (Doc. 24 at 2). The social worker informed the officers Chavez was feeling suicidal, and that he was sitting in the back seat of her car. *Id.* Plaintiffs allege that Storar approached the vehicle and attempted to speak with Chavez, "who did not effectively communicate with him." *Id.* Storar asked Chavez to get out of the car, but Chavez got away while Storar was patting him down. *Id.* at 3. Plaintiffs contend that Chavez pulled a knife out, "point[ed] the knife at himself and threaten[ed] to kill himself." *Id.* According to Plaintiffs, Robins shot Chavez "[w]ithout any warning," and Storar also fired shots. *Id.* Chavez died from his wounds. *Id.*

Plaintiffs initiated this action on June 20, 2012, raising sixteen causes of action for the above acts of Officers Storar and Robins, including: (1) violation of the Fourth Amendment's right to be free from being stopped, seized, and/or arrested without a warrant, reasonable suspicion or probable cause; (2) excessive force in violation of the Fourth Amendment; (3) violation of the American with Disabilities Act of 1990; (4) violation of the Rehabilitation Act of 1973; (5) termination of the familial relationship and companionship in violation of the First and Fourteenth Amendments; (6) deliberate indifference to a serious medical need in violation of the Fourteenth Amendment; (7) civil conspiracy; (8) violation of the Bane Civil Rights Act, Cal. Civ. Code § 52.1; (9) assault; (10) battery; (11) false imprisonment/ arrest; (12) negligence; (13) conspiracy; (14) wrongful death; (15) intentional infliction of emotional distress; and (16) negligent infliction of emotional distress. (Doc. 1 at 2-4).

## II.    Scope of Discovery

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not

be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). Relevant evidence is defined as "evidence having any tendency to make the existence of *any fact that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). Further, relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### III.   Issuance of a Subpoena Duces Tecum

Under Federal Rule of Civil Procedure 45, any party may serve a subpoena that commands a non-party "to produce documents, electronically stored information, or tangible things . . ." Fed. R. Civ. P. 45(a)(1)(C). Subpoenas are subject to the relevance requirements of Rule 26(b), and therefore may command the production of documents which are "nonprivileged [and] . . . relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). In addition, a non-party subject to a subpoena duces tecum "deserve[s] extra protection from the courts." *High Tech Medical Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. Columbia Broadcasting System*, 666 F.2d 364, 371-72 (9th Cir. 1982).

### IV.   Discussion and Analysis

When a person subject to a subpoena refuses or otherwise fails to produce documents, a party may file a motion to compel production. Fed. R. Civ. P. 45(c)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection"). The moving party carries the burden of showing that the requested documents are discoverable within the meaning of Rule 26. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Once this burden is carried, the party opposing discovery has "a heavy burden of showing why discovery was denied." *Id.*

///

**A.     Relevance**

Here, the subpoenaed documents included "all in-patient and out-patient records" related to "[a]ny and all psychiatric, drug and/or alcohol treatment, counseling and rehabilitation records pertaining to the care, treatment, and examination of the patient from the first date to and including the present." (Doc. 23 at 3; Doc. 23-1 at 4). Defendants argue these medical records are discoverable because they are relevant to this action. (Doc. 23 at 4). In the complaint Plaintiffs allege Mr. Chavez suffered from a mental illness. *Id.* at 2 (*see also* Doc. 1 at 9, ¶ 16 (alleging he "suffered from physical and mental impairments, including but not limited to depression, schizophrenia, psychosis, bipolar disorder, auditory hallucinations, paranoid delusions, and/or other mental illnesses"); (Doc. 1 at 21, ¶ 60 (alleging Mr. Chavez "suffered from physical and mental impairments, including but not limited to dementia").

Also as noted above, Plaintiffs specifically allege County violated Title II of the Americans with Disabilities Act because "Defendants violated Decedent's federally guaranteed right to be free from discrimination on the basis of disability by: (a) failing to make reasonable modifications to their policies, practices and procedure to ensure that his needs as an individual with a disability would be met; and (b) failing to train the individual defendants. . ." (Doc. 1 at 21). In addition, Plaintiffs allege County violated the Rehabilitation Act of 1973, roughly, for the same reasons. *Id*. at 22-24.

To prevail on these claims, Plaintiffs must establish Mr. Chavez was "a qualified individual with a disability." 29 U.S.C. § 794(a); 42 U.S.C. § 12131(2); *See also Bentivegna v. United States Dep't of Labor*, 694 F.2d 619, 621 (9th Cir. 1982). Specifically, to succeed on a claim for disability discrimination under Title II of the Act, Plaintiffs must establish: (1) Mr. Chavez "is an individual with a disability;" (2) he was qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) he was excluded or denied the benefits of the services; and (4) he was discriminated against because of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (citing 42 U.S.C. § 1292; *Thomson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Accordingly, Plaintiffs must demonstrate that Mr. Chavez had a mental disability, which places the nature and extent of this disability squarely at issue. Thus, the suggestion that liability on these claims centers on the officers' understanding of Plaintiff's mental condition at the time of the shooting is contrary to law.

On the other hand, the information regarding the extent of the decedent's mental illness is relevant to the issue of damages. Plaintiffs seek damages for the loss of the familial relationship caused by the decedent's death. Plaintiffs will be obligated to prove the nature of those relationships and the value of the loss of the relationships. Defendants are entitled to counter this testimony with evidence demonstrating the decedent's inability to participate in the relationships due to his mental illness. The information alleged in the complaint makes clear that the decedent, at least at the time of his death, was in the throes of an emotional low such that he expressed a desire to kill himself. The trier of fact is entitled to know the pervasiveness of this condition when determining an adequate award and Defendants are entitled to investigate this issue to prepare. Accordingly, Defendants have carried their burden to demonstrate the relevance of the mental health records from Harbor-UCLA Medical Center.

**B.     Privilege**

Because the subpoenaed documents are relevant, they must be produced by the medical center unless the documents are privileged. *See* Fed. R. Civ. P. 26(b)(1). Federal law applies to evaluations of privilege if the action involves federal claims even where, as here, there are pendant state law claims. *United States v. Blackmun*, 72 F.3d 1418, 1423 (9th Cir. 1995). Harbor-UCLA Medical Center refused to produce the documents due to the confidential nature of the information, citing Cal. Welf. & Inst. Code § 5328 and 42 U.S.C. § 290dd-2. (Doc. 23-1 at 9). In addition, Plaintiffs contend the records are not discoverable because they are protected by the psychotherapist-patient privilege. (Doc. 24 at 3-4).

1.     Psychotherapist-patient

The United States Supreme Court has explicitly recognized the existence of a psychotherapist-patient privilege, which protects all confidential communications between a person and a licensed psychiatrist, psychologist, or social worker. *Jaffee v. Redmond*, 518 U.S. 1, 8-17 (1996); *see also United States v. Chase*, 340 F.3d 978, 983-84 (9th Cir. 2003). The privilege may be waived where the patient's specific medical condition is placed into issue. *Maynard v. City of San Jose*, 37 F.3d 1396, 1402 (9th Cir. 1994) (finding the plaintiff "waived any privilege protecting his psychological records when he put his emotional condition at issue"); *EEOC v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 399 (E.D. Cal. 2009).

Here, Plaintiffs contend the privilege applies because "[t]his is a 1983 police shooting excessive

force action," and "what is at issue is the police officers' knowledge of the individual's mental health just prior to the use of force." (Doc. 24 at 5). According to Plaintiffs, "voluminous mental health records of an individual who was the recipient of force are of no consequence because officers did not have that knowledge going into the incident." *Id.* Plaintiffs admit that "it is correct that Plaintiffs have placed Chavez' mental health at issue," but argue "the condition is limited to the time Officers Storar and Robins interacted with Chavez, and what they knew of Chavez going into that interaction." *Id.* at 6. However, as noted above, the officers' understanding of the decedent's mental illness does not determine liability on the ADA or Rehabilitation Act claims. Instead, by raising these claims, Plaintiffs have waived the privilege.

### 2. California Welfare and Institutions Code § 5328

In relevant part, California Welfare & Institutions Code § 5328 provides: "All information and records obtained in the course of providing services . . . to either voluntary or involuntary recipients of services shall be confidential." The statute acts as "a general prohibition against disclosure of information, subject to defined exceptions" and protects information that would not otherwise be privileged. *In re S.W.*, 79 Cal.App.3d 719, 721 (1978).

Importantly, confidential documents shall be disclosed "[t]o the courts, as necessary to the administration of justice." Cal. Welf. & Inst. Code § 5328(f). The only impediment to the Court determining that the information is necessary to the administration of justice is a determination of the applicability of an evidentiary privilege. *Boling v. Superior Court*, 105 Cal. App. 3d 430, 443 (Cal. App. 1st Dist. 1980). As discussed above, the privilege asserted by Plaintiffs has been waived. Moreover, to the extent the records may shed light on his ability to provide society and companionship to the plaintiffs, the records may impact the amount of any damages awarded. Therefore, the administration of justice requires production of the records.

### 3. 42 U.S.C. § 290dd-2

"Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment rehabilitation, or research, which is conducted, regulated or directly or indirectly assisted by any department or agency of the United States shall, except as provided in

subsection (e), be confidential and disclosed only of the purposes and under the circumstances expressly authorized under subsection (b)."  42 USC § 290dd-2.  The Court may order the disclosure of the records if it finds good cause to do so.  42 U.S.C. § 290dd-2(b)(2)(C).

To evaluate whether good cause exists for the disclosure, the Court must "weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services."  42 U.S.C. § 290dd-2(b)(2)(C).  However, given that the patient is deceased, most of the factors for analyzing "good cause" do not apply. The public interest is significantly overshadowed by the need for disclosure in this case.  As noted above, these records may reveal whether Defendants properly treated the decedent properly in terms of his mental health care and may bear on the issue of damages.  Thus, disclosure of the records is appropriate.

### V.    Conclusion and Order

Documents relating to Mr. Chavez's medical history are relevant to this action.  In addition, neither Plaintiffs nor Harbor-UCLA Medical Center have demonstrated that a federal privilege, federal regulation or state statute preclude disclosure of the documents.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' motion to compel is **GRANTED**;
2. Harbor-UCLA Medical Center **SHALL** produce, **within 10 days of the date of service of this order**, documents identified in the subpoena duces tecum dated April 22, 2013. Defendants SHALL serve this order on Harbor-UCLA Medical Center within five days;
3. The records **SHALL** be maintained as confidential, and their use **SHALL** be limited to this litigation; and
4. As needed, the parties may submit to the Court a proposed protective order for these and/or other records.

IT IS SO ORDERED.

Dated:   **July 9, 2013**             /s/ Jennifer L. Thurston
                                      UNITED STATES MAGISTRATE JUDGE

7