**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA CHAVEZ, et al., ) | Case No.: 1:12-cv-01004 JLT |
| Plaintiffs, ) | ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY ADJUDICATION |
| v. ) | |
| COUNTY OF KERN, et al., ) | (Doc. 35) |
| Defendants. ) | |

On January 23, 2012, Sheriff's Deputies, Storar and Robins, were called to a park in Buttonwillow, California where they encountered 18-year-old Christian Chavez, who was suicidal. When Deputy Storar attempted to perform a pat-down search of Mr. Chavez, Chavez pulled a knife and, in response Storar and Robins drew their weapons and shot Chavez. Chavez died at the scene.

This lawsuit alleges constitutional violations brought under 42 U.S.C. § 1983 and state law torts. It is brought by the adoptive mother/biological grandmother, Maria Chavez, as the heir and successor in interest.[1] For the reasons set forth below, the Court **GRANTS IN PART** Defendant's motion for partial summary adjudication.

---

[1] The motion was filed also on behalf of Rene Chavez as the biological father. However, Rene Chavez concedes that due to the adoption of the decedent by Maria Chavez, he lost any rights as an heir and is not a successor in interest. (Doc. 40 at 2 ("Although Rene Chavez is the natural father of the decedent, it is acknowledged that he currently does not have standing to bring an action for the wrongful death of Christian.")) Thus, there is no dispute that the adoptive mother, Maria Chavez, is the heir to the decedent's estate and is the successor to his interests.

1

## I. STATEMENT OF FACTS

On January 23, 2012, deputies were called to the Buttonwillow Park by a mental health coordinator, Yesenia Ocampo. (UDF[2] 3) Ocampo reported she had a client with her who was suicidal and she sought assistance with the situation. Id. Deputes Storar and Robins were dispatched from the Buttonwillow substation and arrived within a few minutes. (UDF 4) Upon receiving the dispatch, Storar requested that the Mental Health Department's Mobile Evaluation Team ("MET") be dispatched to the location as well. Id. The dispatcher confirmed to Storar that the MET had been dispatched. Id.

When Storar and Robins arrived, Ocampo told the officers she had a "high-risk," suicidal client with her. (UDF 5) Ocampo told the officers the client was Christian Chavez and that he had attempted suicide before. Id. Ocampo believed a hold under California's Welfare and Institutions Code § 5150 should be placed because she believed Chavez was a danger to himself. (UDF 6)

The deputies approached Ocampo's vehicle in which Chavez was seated in the rear of the car. (UDF 7, 8) Storar asked Chavez whether he was thinking of committing suicide and Chavez said he was. (UDF 8) Storar observed Chavez's demeanor and noted Chavez sat in a slumped position and avoided eye contact and instead, looked at his feet. (UDF 9) Chavez kept his knees together with his hands on top of his legs or down by the side of his legs. Id.

Storar told Chavez MET was en route to the park. Id. Storar estimated it would take 30 to 45 minutes for MET to arrive. (UDF 10) Given this delay, Storar believed either he would have to detain Chavez on a § 5150 hold or they'd wait for MET to arrive. (UDF 11) Storar decided to detain Chavez based upon the information he had been told and what he observed. Id. Storar decided to move Chavez to the back of his patrol car and, in that process, conduct a pat-down search to ensure Chavez had no weapons on his person. (UDF 12, 13) In answer to Storar asking Chavez twice whether he had weapons on his person, Chavez denied that he did. (UDF 14) Nevertheless, while Storar was beginning the pat-down search, Chavez pulled a knife from his pocket and said he was going to kill himself. (UDF 15) In response, the deputies shot and killed Chavez. (UDF 16)

In this motion, Defendants seek adjudication of most, but not all of the causes of action.

---

[2] "UDF" refers to the statement of undisputed facts submitted by Defendants. "PUDF" refers to Plaintiff's separate statement of undisputed facts.

2

1  Defendants do not seek judgment on the second, fifth and fourteenth causes of action all of which are
2  based upon allegations that Chavez was subjected to excessive force.

3  **II.     STANDARDS FOR SUMMARY JUDGMENT**

4  The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to
5  see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
6  475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no
7  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.
8  R. Civ. P. 56(a). Accordingly, summary judgment should be entered "after adequate time for discovery
9  and upon motion, against a party who fails to make a showing sufficient to establish the existence of an
10 element essential to that party's case, and on which that party will bear the burden of proof at trial."
11 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

12 In addition, a court may grant summary adjudication, or partial summary judgment, when there
13 is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56;
14 *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981). The standards that apply on
15 a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ.
16 P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

17 A party seeking summary judgment bears the "initial responsibility" of demonstrating the
18 absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. An issue of fact is genuine only
19 if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact
20 is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty*
21 *Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir.
22 1987). The moving party demonstrates summary judgment is appropriate by "informing the district
23 court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to
24 interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates
25 the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citation omitted).

26 If the moving party meets its initial burden, the burden shifts to the opposing party to present
27 specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsuhita*, 475
28 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt

as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586, n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

In resolving a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings depositions, answer to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c). Even if a motion for summary adjudication is unopposed, a court cannot grant summary judgment solely because no opposition has been filed. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

### III.  Discussion

#### A.  Plaintiff concedes the motion as to the 3rd, 4th, 6th and 11th causes of action

Plaintiff does not oppose the motion as to the 3rd, 4th, 6th and 11th causes of action. Therefore, as to these causes of action, the motion is **GRANTED**.

#### B.  1st cause of action for unlawful detention/arrest

The cause of action asserts that Defendants stopped, seized "and/or" arrested the decedent "without a warrant, reasonable suspicion, or probable cause" and assert this action was a violation of the Fourth Amendment. (Doc. 1 at 13-16) Notably, this cause of action <u>does not</u> assert that force was used—excessive or otherwise—to affect the stop, seizure or arrest. <u>Id</u>.

A person is "seized" when through force or show of authority, it is reasonably apparent the person is not free to leave. <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980). Seizure of a person alleged to be mentally ill, "is analogous to a criminal arrest and must therefore be supported by probable cause." <u>Maag v. Wessler</u>, 960 F.2d 773, 775 (9th Cir.1991). Thus, such a seizure must

comport with the requirements of the Fourth Amendment just as an arrest of a criminal suspect must do so. Graham v. Connor, 490 U.S. 386, 394 (1989).

Here, Defendants assert they were entitled to detain the decedent based upon California law which provides,

> When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, . . . may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services.

Cal. Welf. & Inst. Code § 5150(a). California courts have determined that probable cause exists to detain a person under § 5150 when the officer knows information that would lead a reasonable person to believe the person is mentally ill and is a danger to himself or others. Heater v. Southwood Psychiatric Ctr., 42 Cal.App.4th 1068, 1080 (1996). The officer must be able to articulate facts, and inferences drawn therefrom, which support the conclusion the detention is required. Id. Probable cause must be supported by "the facts and circumstances within the knowledge" of the officer at the time he makes the arrest. United States v. Jensen, 425 F.3d 698, 704 (9th Cir.2005).

Though they argue Storar's action in moving Chavez from Ocampo's car to the back of the patrol car was lawful (Doc. 35 at 5), in their reply, Defendants argue that Chavez was "never actually detained." (Doc. 39-10) They argue, instead, they "were in the process of detaining him" when the shooting occurred. Id. The Court disagrees. At the time of the shooting, the officers were in the process of taking Chavez into custody. However, he had been detained and, hence, "seized" no later than the point at which Storar had him exit Ocampo's vehicle. By this point, Storar had decided he would place him in the back of the patrol car where he'd be "secure," until he decided whether he would transport Chavez for the § 5150 evaluation or MET would arrive. (UDF 11, 12, 13[3]; Storar Dec. ¶ 6) Thus, these facts demonstrate Chavez was not free to leave or terminate the contact even though Storar had not completed the pat-down. Florida v. Bostick, 501 U.S. 429, 434 (1991)[A seizure

---

[3] Plaintiff asserts there is a dispute as to Facts 10, 12, 13, 14 and but her response to UDF 12 and 14 do not address the facts asserted and the evidence cited in opposition to UDF 10, 13 and 15 does not support that a dispute exists. Thus, the Court finds that these facts are undisputed. Fed. R. Civ. P. 56(e).

occurs when "police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."]

In any event, the Court concludes this detention was supported by probable cause. By this time, Yesenia Ocampo, believing Chavez was suicidal, had requested law enforcement assistance with him. (UDF 3)  Storar and Robins were dispatched as a result. Id. Ocampo reported to Deputies Storar and Robins that Chavez had attempted suicide in the past and believed the current circumstances justified Chavez being taken into custody on a "5150 hold."  (UDF 5, 6)  Chavez expressed to the deputies he was thinking of killing himself.  (UDF 8)  His demeanor, when speaking with the officers, was consistent with a person who was despondent and mentally ill.  (UDF 9)  Defendants argue that these facts and their observations of the Chavez justified a finding they were entitled to take him into custody.  All of these facts demonstrate Storar and Robins had probable cause to detain Chavez pursuant to § 5150.

In opposition to the motion, Plaintiff focuses on the amount of force used by the officers when Chavez displayed the knife.  In doing so, Plaintiff ignores that her first cause of action, as noted above, does not allege any facts related to the claim of excessive force.  Instead, they reserve this claim to their second cause of action which is not raised in Defendants' motion. (Doc. 1 at 17-20)  Indeed, Defendants conceded that questions of fact would preclude summary judgment.

Moreover, Plaintiff disputes that California Welfare and Institutions Code 5278 provides immunity to the officers for the first cause of action.  However, Defendants do not claim the protections of this immunity for this § 1983 claim and, instead, limit this argument to the state causes of action.  Thus, the Court does not find that a genuine dispute of material fact exists and the Court **GRANTS** the motion as to the first cause of action.

C.   **7th and 13th cause of action for conspiracy**

In the 13th cause of action, Plaintiff asserts that the County of Kern, Storar and Robins agreed to participate in a civil conspiracy, under state law, to violate the civil rights of Plaintiff and the decedent. (Doc. 1 at 44)  The allegation of this cause of action is that these defendants conspired to "stop Decedent without a warrant or probable cause" and to "subject Decedent to excessive and unreasonable force."  (Doc. 1 at 44)  Plaintiff alleges Defendants either assisted in the wrongful acts or

6

agreed to engage in a cover-up. Id.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration" Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510- 511 (1994). The elements of a civil conspiracy are "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." Id.

The evidence demonstrates that the deputies were at the scene was because they were dispatched there. There is no evidence they planned or even discussed what they would do when they arrived or, for that matter, discussed the situation while at the scene. Moreover, because the Court has determined Storar and Robins had probable cause to detain Chavez, the claim of conspiracy as to these acts fail. On the other hand, Plaintiff argues the deputies were not separated after the shooting which gave them the opportunity to conspire. Fatal to this argument, however, is that there is no evidence whatsoever that they did so conspire. Thus, summary adjudication of this cause of action is **GRANTED**.

E.   **Welfare & Institutions Code § 5278 does not immunize acts which are not inherent to the decision to detain a person pursuant to a § 5150 hold**

As noted by Defendants, Cal. Welfare & Institutions Code § 5278 provides an immunity to law enforcement officers who take mentally ill persons into custody pursuant to § 5150. Section 5878 provides,

> Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) . . . shall not be held either criminally or civilly liable **for exercising this authority** in accordance with the law.

Emphasis added. Here, the causes of action listed above, are not based upon the officers' decision to exercise their authority to detain Chavez pursuant to § 5150. Instead, these causes of action are based upon the quantum of force used by the officers when Chavez produced the knife. Even if the detention was lawful at its inception—as the Court has found here—the Court does not find that § 5278 was designed to immunize the use of excessive force. Indeed, such an interpretation would be

7

inconsistent with California Government Code § 856 which reads,

> (a) Neither a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment:
>
> (1) Whether to confine a person for mental illness or addiction.
>
> (2) The terms and conditions of confinement for mental illness or addiction.
>
> (3) Whether to parole, grant a leave of absence to, or release a person confined for mental illness or addiction.
>
> (b) A public employee is not liable for carrying out with due care a determination described in subdivision (a).
>
> (c) **Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in carrying out or failing to carry out**:
>
> (1) A determination to confine or not to confine a person for mental illness or addiction.
>
> (2) The terms or conditions of confinement of a person for mental illness or addiction.
>
> (3) A determination to parole, grant a leave of absence to, or release a person confined for mental illness or addiction.

Emphasis added. This is supported by other Government Codes which imposes liability for acts immunizing public employees when enforcing the law with due care *except* for liability for false arrest or false imprisonment. Cal. Gov. Code 820.4. Likewise, though Cal. Gov. Code § 845.8 immunizes officers from liability for injuries suffered by a person resisting arrest, the California Supreme Court has determined that this immunity does not extend to the officer's use of excessive force. Also, public employees are liable for their own negligence even though generally they are immune from liability for injuries resulting from recapturing an escaped mental patient. Cal. Gov. Code § 856.2.

Any other interpretation would mean that even if the officer's action were not immunized under Gov. Code § 856 due to a wrongful act, he would be immunized even still by § 5278. This inconsistency cannot be explained and the Court cannot accept that some of the most vulnerable people—the mentally ill—would be deprived of a remedy after suffering excessive force when officers carry out the detention[4] but those who are not so disabled, would have their remedy left intact

---

[4] Moreover, the Court rejects that the use of deadly force occurred in this case due to the decision of the officers to detain Chavez, as noted above. Indeed, deadly force *could not have been used* lawfully to affect this particular detention.

1   when the officers inflict the same harm.[5]

2   Defendants rely upon Bias v. Moynihan, 508 F.3d 1212 (9th Cir. 2007), for the proposition that
3   there can be no liability for any state torts, including battery, due to the immunity provided by § 5278.
4   In Bias, the plaintiff was detained twice on a § 5150 hold after making bizarre statements, threating to
5   kill herself on one occasion and acting bizarrely. Id. at 1216-1217. Both times, she was released the
6   same day after the mental evaluation. Id. The opinion does not demonstrate that the officer used
7   excessive force—or any force—in making the detention and there is no indication that the claimed
8   battery was perpetrated by the officer. Id. at 1221-1222. Instead it appears the battery claim was a
9   consequence of the medical evaluation she underwent *because of* the officer's decision to detain her
10  on the § 5150 hold.

11  In extending immunity to the police officer who detained the plaintiff, Bias relied upon Heater
12  v. Southwood Psychiatric Ctr., 42 Cal.App.4th at 1083 when it observed, "'[S]ection 5278 means
13  precisely what it says it means, and that civil liability, whether for battery, [or] for false imprisonment
14  ... is precluded insofar as the detention is 'in accordance with the law.'" Bias, at 1221. It is important
15  to note that Bias did not consider whether an assault or battery occurring *outside of the provision of*
16  *medical treatment,* is immunized.

17  Moreover, the Heater court considered the liability of medical providers—rather than police
18  officers—who were obligated, according to Welfare and Institutions Code § 5152[6], to provide medical
19  care to the plaintiff who was involuntarily hospitalized. Heater, at 1083. Given the involuntary nature
20  of the hospitalization, the plaintiff had not consented to the treatment and sued the medical staff at the
21  hospital for assault, battery, false imprisonment and medical malpractice. Id. at 1071. When the trial
22  court determined the medical staff were immune from liability, Heater appealed and argued there was
23  sufficient evidence to demonstrate, false imprisonment based upon the detention which he claimed

---

25  Tennessee v. Garner, 471 U.S. 1, 11 (1985). There is no evidence Chavez was a felon or that he was attempting to escape, even assuming he was a suspected felon. Instead, the officers claim they used deadly force to prevent Chavez from using
26  the knife on them or others.
    [5] Indeed, Defendants' interpretation would mean that the officers would be immunized if they shot Chavez even had he not
27  produced the knife and was fully compliant; this cannot be.
    [6] Section 5152(a) reads, "Each person admitted to a facility for 72-hour treatment and evaluation under the provisions of
28  this article shall receive an evaluation as soon as possible after he or she is admitted **and shall receive whatever treatment and care his or her condition requires** for the full period that he or she is held."

was not in accordance with the law, an assault and battery due to the forced medication and medical malpractice which, he claimed was not immunized by § 5278. Id. at 1079.

The court of appeal rejected that Heater suffered false imprisonment because the evidence demonstrated he was properly evaluated and there was probable cause to support the detention. Heater, at 1079-1080. Likewise, because consent is not required to provide medication to a patient who has been involuntarily detained under § 5150, the court rejected that there was an assault or battery. Id. at 1081-1083. Finally, the court found that this claim and the malpractice claim fell within the immunity of § 5278 because this section specifically immunizes action taken to treat the person detained.

However, in Jacobs v. Grossmont Hospital, 108 Cal.App.4th 69, 75, 79-80 (2003), the court recognized that the purposes behind the § 5150 hold was to protect the interests of the mentally ill. The court expressly refused to extend the immunity provided by section 5278 to acts that are negligent or worse. Id. at 78. The court held, "the immunity does not extend to other[7] negligent acts, intentional torts, or criminal wrongs committed during the course of the detention, evaluation, or treatment." Id. at 78-79.

In any event, whether even intentional and unlawful acts are intended to be encompassed by the immunity, the Court finds the immunity only "extends to claims based on facts that are inherent in an involuntary detention that is undertaken pursuant to section 5150." Jacobs, 108 Cal.App.4th at 78-79. The Court does not find that the use of excessive force is an act inherent in the involuntary detention.

Therefore, the motion is **DENIED** as to the 8th, 9th, 10th, 12th, 15th and 16th causes of action.

**F.     The Bane Act applies only to acts which are coercive in nature independent of the constitutional violation**

Here, Plaintiff alleges Chavez suffered an unlawful seizure, was denied medical care and suffered the use of excessive force as grounds for the claimed Bane Act violation. It is not clear

---

[7] In Gonzalez v. Paradise Valley Hosp., 111 Cal.App.4th 735, 742 (2003), the court noted it erred in using the word "other" related to negligent acts committed during the detention and held, "We clarify here that the immunity of section 5278 does not extend to any negligent acts, and the inclusion of the word "other" in Jacobs was unintended."

whether the seizure claimed in this cause of action was only that which occurred as a result of the use of deadly force or if it also intends to address the detention pursuant to § 5150. However, for the reasons already discussed, the Bane Act violation cannot succeed as to the detention because the Court has found it was made upon probable cause. Likewise, the Bane Act violation cannot be premised on the failure to provide timely medical attention given Plaintiff has conceded the motion as to this claim. Thus, the Court evaluates only whether judgment may be granted as to the Bane Act as to the seizure which occurred as to the use of deadly force.

The Bane Act provides a cause of action for interference "by threats, intimidation, or coercion" or attempted interference, "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ.Code § 52.1(a); Venegas v. County of Los Angeles, 32 Cal.4th 820, 843 (2004) ("Civil Code section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."). To state a claim under 52.1, the plaintiff must demonstrate that the interference with the constitutional right was accompanied by an act of coercion. Jones v. Kmart, 17 Cal.4th 329, 334 (1998)("[S]ection 52.1 does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion.")

Recently in Bender v. County of Los Angeles, 217 Cal.App.4th 968, 977-978 (2013), the court held that where an arrest is unlawful and excessive force is used, a claim is stated under California Civil Code section 52.1. However, the court was careful to exclude from its analysis whether a Bane Act violation can be demonstrated when the arrest is lawful but excessive force is used. Id. Bender relied upon Shoyoye v. County of Los Angeles, 203 Cal.App.4th 947, 956 (2012), which considered whether a Bane Act violation can be founded only on a constitutional violation which, in and of itself, is inherently coercive. In rejecting that this is sufficient to state a claim under the Bane Act, Shoyoye held, "[W]here coercion is inherent in the constitutional violation alleged . . . the statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." Id. at 959.

This Court has held similarly when it explained, "The text of the Bane Act ... indicates that a

cause of action under the act requires a predicate—the application of threat, intimidation or coercion and an object—interference with a constitutional or statutory right." Rodriguez v. City of Fresno, 819 F.Supp.2d 937, 953 (E.D.Cal.2011).  Thus, a plaintiff must demonstrate that a constitution violation "occurred and that the violation was accompanied by threats, intimidation or coercion within the meaning of the statute." Barsamian v. City of Kingsburg, 597 F.Supp.2d 1054, 1057 (E.D.Cal.2009) (emphasis added).   In evaluating the threatening or coercive conduct, the Court must consider "whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." Richardson v. City of Antioch, 722 F.Supp.2d 1133, 1147 (N.D.Cal.2010).

In Rodriguez, the officers purposefully shot at a person they claimed was a gang member and whom they believed was reaching for a gun. Rodriguez, 819 F.Supp.2d at 943. In doing so, Plaintiff was struck by a stray bullet. Id. Plaintiff asserted a number of claims including one brought under the Bane Act. Id. at 953. In granting summary judgment to the defendants, the Court concluded "that in order to maintain a claim under the Bane Act, the coercive force applied against a plaintiff must result in an interference with a separate constitutional or statutory right. It is not sufficient that the right interfered with is the right to be free of the force or threat of force that was applied." Id.

Though Plaintiff cites to Knapp v. City of Oakland, 647 F.Supp.2d 1129 (N.D. Cal. 2009), Knapp did not consider Shoyoye given that it was decided three years before this state court decision was issued. Despite the holding in Knapp—which, notably, contradicts this District's opinions—this Court is bound by the holding of Shoyoye because there is no "convincing evidence that the California Supreme Court would hold otherwise." Carvalho v. Equifax Info. Services, LLC, 629 F.3d 876, 889 (9th Cir.2010); see also Alvarez v. Chevron Corp., 656 F.3d 925, 932 n. 7 (9th Cir.2011) (a decision of a California Court of Appeal on issue of state law is binding on a federal court "because there is no California Supreme Court decision on point, and no indication that the California Supreme Court would disagree" with the Court of Appeal).  Moreover, the language of the Bane Act belies a finding that unconstitutional acts without separate threats of violence, violence or coercion could constitute a claim. Therefore, the Court finds that there must be evidence of a separate act of violence, threats of violence or coercion along with the constitutional violation to constitute a Bane Act claim.

Here, the claimed Bane Act violation is the deadly force used; there is no separate act alleged. Even still, Plaintiff asserts that there was a coercive effect by the deputies' actions. First, Plaintiff asserts the deputies used a "forceful tone," but the evidence cited in support of this claim does not support this. Instead, Plaintiff testified that Storar initially spoke to the decedent in a "conversational tone" but later "raised his voice" (Doc. 35-8 at 3) and spoke in a "loud voice." (Doc. 37-1 at 173) In addition, the deputy touched the top of the vehicle with his left hand and placed his right on the open door while talking to the decedent. In this way, apparently, Plaintiff asserts that the deputy's body positioning was coercive and threatening; exactly why she thinks so, is unclear. Likewise, though Plaintiff testified the deputy "got [the decedent] out of the car" (Id.), Plaintiff was inconsistent in her testimony about how this was accomplished. First, she clarified the deputy used gestures to do so. (Id.) Next she stated she didn't "know whether he asked him to get out of the car or he took him out by the hand." (Doc. 37-1 at 174) Finally, Plaintiff denied that the deputy touched the decedent when the decedent exited the car. (Doc. 37-1 at 161)

In any event, there is no evidence cited that the decedent felt threatened or coerced by the deputies' tone of voice, his body's positioning or by being asked to exit the vehicle. Indeed, it is undisputed that the decedent was fully aware that soon after he arrived at the park, he would be transported for treatment.[8] (Plaintiff's Depo Vol 2 at p. 7) Thus, the Court concludes there is no evidence that being asked to step out of the vehicle was coercive or threatening such to give rise to Bane Act liability.

On the other hand, Plaintiff contends that Storar failed to develop trust with the decedent, "rushed the situation" and caused the decedent to become "agitated." (Doc. 37-2 at 6, 8, 9, 14, 15) First, again, Plaintiff testified that the decedent knew that when he arrived at the park, he'd exit the vehicle and be transported for treatment. (Plaintiff's Depo Vol 2 at p. 7) Second, there is no showing that the decedent became "agitated." Though the decedent drew a knife during the pat-down search, Plaintiff cites to no evidence that this was in response to anything the deputies had done or that the decedent was "agitated" when he did so. (Doc. 37-1 at 152-158) Plaintiff testified,

---

[8] Plaintiff testified the decedent anticipated that an ambulance to take him for treatment though there is no evidence he objected to the deputy doing so.

> And I saw that Chris has his hands in his sweater, and suddenly he started to back away from the officer. And he pulled – he started to walk away from the officer, and he pulled out the little knife and pointed it at himself.

Id. at 154-155. Plaintiff cites to no evidence to explain why the decedent pulled out the knife at this time.

Though there is no evidentiary support Plaintiff's claims in this regard, even if this occurred, there is no showing that the failure to establish trust or rushing the situation is evidence of coercion. (Shoyoye v. Cnty. of Los Angeles, 203 Cal.App.4th 947, 958-59 (2012) ("[S]ubdivision (j) states that: "Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself *threatens violence* against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person *threatening violence* had the apparent ability to carry out the threat.") Therefore, the Court **GRANTS** the motion as to the eighth cause of action.

**ORDER**

Based upon the foregoing, it is **HEREBY ORDERED:**

1. Defendants' motion for partial summary judgment (Doc. 35) is **GRANTED** as to the 1st, 3rd, 4th, 6th, 7th, 8th, 11th and 13th causes of action;

2. Defendants' motion for partial summary judgment (Doc. 35) is **DENIED** as to the 9th, 10th, 12th, 15th and 16th causes of action; and

3. The action is **DISMISSED** as to Rene Chavez.

IT IS SO ORDERED.

Dated:   **February 3, 2014**          /s/ **Jennifer L. Thurston**
                                      UNITED STATES MAGISTRATE JUDGE