1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | MARIA CHAVEZ, et al, | ) Case No.: 1:12-cv-01004 - JLT |
| 12 | Plaintiffs, | ) <u>PRETRIAL ORDER</u> |
| 13 | v. | ) Deadlines: |
| 14 | | ) Motions in Limine Filing: 1/9/15 |
| 15 | COUNTY OF KERN, et al., | ) Oppositions to Motions in Limine: 1/23/15 |
| 16 | Defendants. | ) Hearing on Motions in Limine: 2/3/15, 1:30 p.m. |
| 17 | | ) Trial Submissions: 2/6/15 |
| 18 | | ) Jury trial: 2/17/2015 |

19        Decedent Christian Chavez was shot and killed during an incident on January 23, 2012, which

20    involved Officers of the Kern County Sheriff's Department.  Plaintiff Maria Chavez, individually and

21    as the successor-in-interest of Christian Chavez, asserts Defendants are liable for several civil rights

22    violations under 42 U.S.C. § 1983, as well as violations of California tort law, Title II of the Americans

23    with Disabilities Act, and the Rehabilitation Act of 1973.  (*See generally* Doc. 1.)

24        Upon consideration of the Joint Pre-Trial Conference Statement (Doc. 48), the parties'

25    comments at the hearing on December 10, 2014, and the file in this case, the Court issues the following

26    Pre-Trial Order.

27    **A.      JURISDICTION/ VENUE**

28        The Court has jurisdiction over the claims in this action pursuant to 42 U.S.C. § 1983 and 28

1

U.S.C. § 1367(a).  (Doc. 1 at 4-5; Doc. 48 at 2.)  Further, Plaintiff's claims arise out of events that occurred in Kern County, California.  Accordingly, venue is proper in the United States District Court for the Eastern District of California sitting in Bakersfield.  *See* 28 U.S.C. § 1391.

**B.      JURY TRIAL**

Plaintiff included a demand for jury trial in the Complaint.  (Doc. 1 at 1; Doc. 48 at 2).  Thus, trial will be by jury.

**C.      UNDISPUTED FACTS**

1.      The subject incident occurred on January 23, 2012, within Kern County, California.

2.      The subject incident involved Deputies of the Kern County Sheriff' Department.

3.      The subject incident occurred at a parking lot at the Buttonwillow Recreational Center, located at 8653 Station Rd, Buttonwillow, California.

4.      Deputy Tommy Jared Robins was at the scene of the subject incident.

5.      Deputy Jeremy Storar was at the scene of the subject incident.

6.      Plaintiff Maria Chavez was at the scene of the subject incident.

7.      Yesenia Ocampo was at the scene of the subject incident.

8.      Yesenia Ocampo, decedent Christian Chavez, and Maria Chavez arrived at the scene of the subject incident together in Ocampo's vehicle that was driven by Yesenia Ocampo from the Chavez residence located at 306 Sudan Ave., Buttonwillow, CA.

9.      Deputies Robins and Storar arrived at the scene in separate patrol vehicles of the Kern County Sherriff's Department.

10.      Yesenia Ocampo at the time of the subject incident was an employee of College Community Services.

11.      At the time of the incident and months prior, decedent, Christian Chavez, was a client of College Community Services.

12.      Yesenia Ocampo dialed 911 and told the dispatcher that Christian Chavez had suicidal thoughts.

13.      Decedent Christian Chavez had in his possession a knife with an approximately three-inch blade.

14.    Deputies Robins and Storar fired their service weapons at Christian Chavez, fatally wounding him.

15.    At the time of the incident Christian Chavez was eighteen years old.

16.    Decedent Christian Chavez had a history of mental illness.

17.    Jason Balasis of the Kern County Sheriff's Department was involved in the investigation of the subject incident.

18.    Mark Riehle of the Kern County Sheriff's Department was involved in the investigation of the subject incident.

19.    Regina Mancera of the Kern County Coroner's Office was involved in the investigation of the subject incident.

20.    Dionisio Mitchell of the Kern County Fire Department arrived at the scene of the subject incident.

21.    Christy Chacon was an employee of Hall Ambulance who arrived at the scene of the subject incident.

22.    Maria Chavez was the lawful parent of Christian Chavez. Maria Chavez was also Christian Chavez' biological grandmother.

23.    Rene Chavez was the biological father of decedent Christian Chavez.  At time of the subject incident Rene Chavez did not have legal parental rights over Christian Chavez.

24.    Osvaldo Chavez was the biological uncle of decedent Christian Chavez.

25.    Osvaldo Chavez arrived at the scene of the subject incident after decedent was shot by Deputies Storar and Robins.

26.    Laura Dodge was an employee of College Community Services.

27.    Alejandra Gutierrez was an employee of College Community Services.

28.    Adriana Salinas was an employee of College Community Services.

29.    College Community Services is a corporation independent of the County of Kern with which County of Kern contracts for services.

30.    College Community Services is solely responsible for hiring, training, supervising and compensating its personnel.

3

**D.  DISPUTED FACTS**

All other facts are disputed.

**E.  DISPUTED EVIDENTIARY ISSUES**

<u>**Plaintiff's Evidentiary Issues**</u>

1.  Exclusion of testimony from Gaylan Warren, Defendants' expert witness.

2.  Exclusion of alleged drug use or alcohol abuse by Decedent.

3.  Exclusion of evidence of alleged gang affiliation or membership.  At the hearing, Defendants indicated they did not intend to introduce this type.  Thus, the Court **ORDERS** that introduction of evidence will not be allowed.

4.  Exclusion of improper character evidence that Decedent had a propensity for violence.

5.  Exclusion of references to lyrics to song by Notorious BIG regarding suicide found on Decedent. Plaintiff will seek to exclude evidence that Decedent listened to "gangster rap."

6.  Exclusion of certain opinions by Defense expert Kris Monhandie that it was inevitable that Decedent would kill himself.

7.  Exclusion of opinions and conclusions of the investigative reports of the incident.

8.  Exclusion of references to Plaintiff Maria Chavez' state action against College Community Services and its related entities and employees.

9.  Limitation of the evidence of Decedent's mental health history.

<u>**Defendants' Evidentiary Issues**</u>

1.  Exclusion of any testimony by Dr. Naqvi, Plaintiffs' expert witness, Dr. Naqvi.

2.  Exclusion of any evidence regarding the handcuffing of Christian Chavez after the shooting and any efforts made after the shooting by Defendants to resuscitate or otherwise render aid to Christian Chavez.

3.  Defendants intend to seek an instruction that Plaintiffs' counsel and their witnesses not refer to Christian Chavez as a "boy", given that as of the time of the incident, he was an adult.

4.  Defendants intend to seek an instruction that Plaintiffs' counsel and Plaintiffs' expert

4

D. P. VanBlaricom refer to defendants Storar and Robins by their names, and not by the designations "Shooter 1" and "Shooter 2."

5.     Exclusion of the introduction of any autopsy photographs or post-shooting photographs of Christian Chavez's body as being unduly provocative and prejudicial, particularly since there is no dispute that defendants shot and killed Christian Chavez.

6.     Defendants anticipate marking as exhibits selected medical records pertaining to Christian Chavez's psychiatric hospitalizations between January, 2010 and November, 2012. Defendants will seek Plaintiffs' cooperation in stipulating to foundation and admissibility of the documents to avoid having to subpoena the custodians of records from those various institutions to testify.

**F.    SPECIAL FACTUAL INFORMATION**

None.

**G.    RELIEF SOUGHT**

Plaintiff seeks general damages, special damages, punitive damages, prejudgment interest, post-judgment interest pursuant to 28 U.S.C. §1961(a), attorney's fees and costs, civil penalties for the violation of the Bane Act, and "further relief as the Court deems just and proper." (Doc. 1 at 44-45.)

**H.    POINTS OF LAW**

Plaintiff asserts the Defendants are liable for the following: (1) excessive use of force in violation of the Fourth Amendment; (2) violations of the right to a familial relationship under the First and Fourteenth Amendments; (3) assault; (4) battery; (5) negligence; (6) wrongful death; (7) intentional infliction of emotional distress; and (8) negligent infliction of emotional distress. (*See* Doc. 1 at 13-47; Doc. 43 at 14.)

    **1.    Violation of the Fourth Amendment**

The Fourth Amendment prohibits the use of excessive force and arrests without probable cause or other justification. *See Graham v. Connor*, 490 U.S. 386, 388 (1989) ("claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' ... are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard"); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("the use of force to effect an

arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures").  The Supreme Court explained,

> As in other Fourth Amendment contexts . . . the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (internal citations omitted).  In applying this standard, the fact-finder considers "the totality of the circumstances and . . . whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

Factors to be considered in evaluating whether the force used was reasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).  Further, the fact finder may consider "whether officers administered a warning, assuming it was practicable." *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007).  Ultimately, the "reasonableness" of the actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

### 2.    Violation of the familial relationship

"[T]he freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights." *Board of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 544 (1987).  Therefore, "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1992); *see also Venerable v. City of Sacramento*, 185 F. Supp. 2d 1128, 1133 (E.D. Cal. 2002); *Ovando v. City of Los Angeles*, 92 F.Supp.2d 1011, 1017 (C.D. Cal. 2000) (parents of a decedent "have been found to have a constitutionally protected liberty interest in their familial relationship under the Fourteenth Amendment").

To succeed on a claim for interference with familial rights under Section 1983, a plaintiff must prove the government official acted in a conscience shocking manner. In *Hayes v. Cnty. of San Diego*,

736 F.3d 1223, 1230 (9th Cir. 2013), the Ninth Circuit Court of Appeals considered the proper standard necessary to impose liability when a law enforcement officer kills a family member.

> "Official conduct that 'shocks the conscience' in depriving [a child] of that interest is cognizable as a violation of due process." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir.2010). In determining whether excessive force shocks the conscience, the court must first ask "whether the circumstances are such that actual deliberation [by the officer] is practical." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir.2008) (quoting *Moreland*, 159 F.3d at 372 (internal quotation marks omitted)). Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. *Wilkinson*, 610 F.3d at 554.

Thus, when confronted with an unexpected turn of events, officers shock-the- conscience when they use deadly force for a purpose unrelated to a legitimate law enforcement objective. Likewise, they shock-the- conscience when, in circumstances where they have the opportunity to act with deliberation, they use deadly force with deliberate indifference to the constitutional rights of the plaintiffs.

### 3.    Assault

To succeed on a claim of assault under California law, a plaintiff must establish: (1) that the defendant intended or threatened to cause offensive contact (2) the plaintiff believed himself to be in imminent danger, (3) the contact occurred against the plaintiff's will, (4) the conduct caused harm, and (5) the defendant's conduct substantially caused the harm. *Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 151 Cal.Rptr.3d 257, 269 (2013).

### 4.    Battery

Under California law, a battery occurs when: "[a] defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) [the] plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to [the] plaintiff." *Brown v. Ransweiler*, 89 Cal.Rptr.3d 801, 811 (2009). Thus, the claim is analogous to a claim for excessive use of force, and a claim of battery by a police officer requires a showing of unreasonable force. *Id.*; *see also Edson v. City of Anaheim,* 63 Cal.App.4th 1269, 1272 (1998).

### 5.    Negligence

To establish a claim for negligence, Plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

In general, "the plaintiff must show that the defendant owed a duty to the plaintiff." *See John B. v. Superior Court*, 38 Cal. 4th 1177, 1188 (2006).

### 6.    Wrongful death

Pursuant to Cal. Civ. Code § 337.60, an individual may pursue "[a] cause of action for the death of a person caused by the wrongful act or neglect of another." The reasonableness standard that applies to this claim is the same as the reasonableness standard that applies to Plaintiff's Fourth Amendment excessive force claim. *See Hernandez v. City of Pomona*, 46 Cal.4th 501, 513-14, 94 Cal. Rptr. 3d 1, 207 P.3d 506 (2009).

### 7.    Intentional infliction of emotional distress

To succeed on a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must show: (1) outrageous conduct by the defendants (2) who intended to cause or recklessly disregarded the probability of causing emotional distress, (3) and the defendants' actions were the actual and proximate cause (4) of the individual's severe emotional suffering. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (citing *Brooks v. United States*, 29 F. Supp. 2d 613, 617 (N.D. Cal. 1998)). Outrageous conduct is demonstrated when a "defendant's conduct was 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Van Horn v. Hornbeak*, 2009 U.S. Dist. LEXIS 16134, at *8 (E.D. Cal. Feb. 18, 2009) (quoting *Ricard v. Pacific Indemnity Co.*, 132 Cal. App. 3d 886, 895 (1982)).

### 8.    Negligent infliction of emotional distress

Notably, under California law, "the negligent causing of emotional distress is not an independent tort, but the tort of negligence." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 9 Cal. Rptr. 2d 615, 831 P.2d 1197, 1200 (Ct. App. 1992). Thus, a claim of negligent infliction of emotional distress "contains the traditional elements of duty, breach, causation and damages." *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 106 (Ct. App. 1992).

### 9.    Punitive damages

Plaintiffs have the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2009). The jury must find that the defendants' conduct was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S.

30, 56 (1986).  *See also Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994).

///

## I.  ABANDONDED ISSUES

No issues have been abandoned by Plaintiff.  However, the Court dismissed the following claims from Plaintiff's complaint: a seizure in violation of the Fourteenth Amendment, a violation of Title II of the Americans with Disability Act, a violation of the Rehabilitation Act, deliberate indifference and failure to provide medical care, civil conspiracy, violations of the Bane Act, false imprisonment, and conspiracy under California law.  (*See* 43 at 14; Doc. 48 at 11.)  In addition, the claims presented by plaintiff Rene Chavez were dismissed for lack of standing.  (*Id.*)

## J.  WITNESSES

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."[1]  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

l.    Jason Balasis

2.    Juanita Buck

3.    Christy Chacon

4.    Maria Chavez

5.    Osvaldo Chavez

6.    Rene Chavez

7.    William Tyson Davis, Jr.,

8.    Laura Dodge

9.    Alejandra Gutierrez

10.   Douglas Jauch, Sgt.

---

[1] Plaintiff also requested that "Three other individuals familiar with decedent and Plaintiff" be listed as witnesses. However, Plaintiff has failed to identify these witnesses in the joint pretrial statement or in a Rule 26 disclosure so these unnamed witnesses will not be allowed.

11. Dave Kessler

12. Lawa Lopez

13. Regina Mancera

14. Dionisio Mitchell

15. Yesenia Ocampo

16. Mark Riehle

17. Deputy Tommy Jared Robins

18. Adriana Salinas

19. Sgt. William Smallwood, III

20. Jeremy Storar

21. James Waterman

22. Joln Gardiner, Ph.D

23. Syed Naqvi, M.D.

24. Donald Perry Van Blaricom,

25. David Posey, M.D.

26. Joseph Callanan

27. Gaylan Roy Warren

28. Kris Monhandie

29. Dr. Anna Chiles

30. Rev. Pedro Umana

31. Luis Alberto Diaz

32. Maria Ortega

33. Lesley Ortega

34. Will Marilao (Shafter PD)

35. James Newell

36. S. Parra (Shafter PD)

37. Luis Pena (Shafter PD)

38. Kevin Green (Shafter PD)

39.     Medical/psychiatric records custodians

**K.     EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

**Plaintiff's Exhibits**

1.     Recorded interviews of Storar and Robins.

2.     Personnel files of Deputies Storar and Robins, including training records.

3.     Officer involved shooting records from the Kern County Sheriff's Department.

4.     Policies and procedures of the Kern County Sheriff s Department regarding responding to people with mental illness.

5.     Policies and procedures of the Kern County Mental Health Department, including the Mobile Evaluation Team.

6.     Training records offered at the Kern County Sheriff's Academy regarding responding to people with mental illness.

7.     Legislative history and analysis regarding Welfare & Institutions Code § 5150 et al.

8.     Investigative procedures and policies of the Kern County Sheriff's Department in regard to investigating officer involved shootings.

9.     Investigative procedures and policies of the Kern County Sheriff's Department in regard to investigating officer involved shootings.

10.     Policies of the Kern County Sheriff's Department regarding disciplining officers.

11.     Transcript and recording of 911 called made by Yesenia Ocampo.

12.     Medical records of Maria Chavez.

**Defendant's Exhibits**

1.     Scene photographs

2.     Scene diagram prepared by KCSO TI

3.     Photo of paper with song lyrics found in Christian Chavez's pocket

11

4.     Photo of knife

5.     Transcript of 911 call placed by Yesenia Ocampo

6.     Training records of defendants Robins and Storar

7.     College Community Services (CCS) individual progress notes and assessment authored by CCS employees for the following dates:

     a.     Alejandra Gutierrez: 2011: 3/17, 3/24, 3/30, 4/8, 4/13, 4/19, 5/10, 5/11, 5/17, 6/7, 6/9, 6/4, 7/7, 7/14, 8/29, 8/31, 9/2, 9/6, 9/15, 9/22, 12/27; 2012: 1/23

     b.     Adriana Salinas: 2011 : 9 121 (annual assessment)

     c.     Laura Melton Dodge: 2010:9/16 (annual assessment); 2011: 1/10, 1/20, 2/28, 3/11, 3/21, 4/8, 4/21, 5/6, 5/16, 8/25, 8/31, 9/15, 10/31 (treatment plan), 11/3 (TBS assessment & plan); 2012: 1/12

     d.     Yesenia Ocampo: 2011: 11/7, 12/10, 12/28, 12/30; 2012: 1/6, 1/11, 1/16, 1/23; handwritten notes made on l/23/12

8.     Medical/psychiatric records from the following institutions:

     a.     BHC Alhambra Hospital

- 1/25/10 Point of Contact Assessment
- 1/28/10 Psychiatric Assessment/Evaluation
- 1/29/10 Progress note
- 1/30/10 Progress note
- 1/31/10 Progress note
- 2/l/10 Progress note
- 2/2/10 Progress note
- 2/3/10 Discharge summary
- 4/13/10 72-hour hold
- 4/15/10 Psychiatric evaluation
- 4/16/10 Progress note
- 4/17/10 Progress note
- 4/18/10 Progress note

12

1      • 4/21/10 Case management note

2      • 4/21/10 Discharge summary

3      b.   College Hospital

4         • 5/5/10 Foster Family Agency Agreement

5         • 5/18/10 Discharge summary

6         • 5/17/10 Foster home note

7         • 5/6/10 Multi-disciplinary progress notes

8         • 5/6/10 External social history

9      c.   Aurora Charter Oaks Hospital

10        • 2/22/10 72-hour hold

11        • 2/22/10 progress note

12        • 2/23/10 Comprehensive Screening Assessment

13        • 2/24/10 Psychiatric History and Mental Status Exam

14        • 2/24/10  Progress note

15        • 2/25/10 Progress note

16        • 2/26/10 Progress note

17        • 2/27/10 Progress note

18        • 2/28/10 Progress note

19        • 3/1/10 Discharge summary

20        • 4/6/10 72-hour hold

21        • 4/7/10 Medication worksheet

22        • 4/7/10 Comprehensive screening assessment

23        • 4/7/10 Progress note

24        • 4/12/10 Discharge summary

25        • 6/30/10 72-hour hold

26        • 7/l/10 Involuntary patient advisement

27        • 7/1/10 Nursing assessment

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 7/1/10 Comprehensive screening assessment
- 7/2/10 Progress note
- 7 /9/l0 Discharge summary
- 7/29/10 30-day abbreviated screening assessment
- 7/30/10 Psychiatric history and mental status exam
- 8/4/10 Discharge summary

d.      Sherman Oaks Hospital- 2/21/10 Discharge report

e.      Cedars Sinai Medical Center

- 4/6/10 ER Treatment Record
- 4/16/10 Involuntary patient advisement

f.      Harbor-UCLA Hospital

- 7/24/10 Pediatric History and physical
- 7/26/10 Progress note
- 7/29/10 Progress note

g.      Good Samaritan Hospital

- 8/31/11 PEC/CSU Unplanned Individual progress note
- 9/4/11 Progress note
- 9/12/11 72-hour hold
- 9/12/11 Discharge summary
- 9/20/1 Discharge summary
- 9/23/11 Psychiatric evaluation
- 9/24/11 Intake interview
- 10/3/11 Progress note
- 10/5/11 Progress note
- 10/12/11 Progress note
- 10/14/11 Progress note
- 10/17/11 Progress note

14

- 10/19/11 Progress note
- 10/24/11 Progress note
- 10/26/11 Progress note
- 10/27/11 Progress note
- 10/28/11 Progress note
- 10/31/11 Progress note
- 11/3/11 Discharge summary

9.     Shafter Police Department

    a.    72-hour hold

    b.    9-22-11 report

    c.    12-25-11 report

10.    2012 agreement between County of Kern and College Community Services.

11.    Deposition transcripts and discovery responses utilized for impeachment purposes

12.    Excerpts from the treatise "Investigation and Prevention of Officer-Involved Deaths" by D.P. Van Blaricom

Counsel are ordered to confer no later **January 16, 2015**, for purposes of pre-marking and examining each other's exhibits.

1.    At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits.  In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist.  <u>Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference</u>.

2.    At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence.  These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above.  Joint exhibits **SHALL** be admitted into without further foundation.

All Joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g.

15

JT/1, JT/2, etc.).  Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The Parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered which is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits.  The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

### INDEX OF EXHIBITS

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|

3.    As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party.   Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4.    Each exhibit binder shall contain an index which is placed in the binder before the exhibits.   Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

### INDEX OF EXHIBITS

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

5.    On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Admissible but for Foundation."

6.    On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

After the exhibit conference, each counsel SHALL develop four complete, legible sets of

16

exhibits.  Counsel SHALL deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to opposing counsel, no later than 4:00 p.m., on **February 6, 2015**.  Counsel SHALL determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

      7.     The Parties SHALL number each page of any exhibit exceeding one page in length.

**L.    DISCOVERY DOCUMENTS**

      The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

      <u>**Plaintiff anticipates offering the following discovery documents at trial**</u>:

      1.     Discovery Responses from the County of Kern in response to Plaintiff's Requests for Production.

      2.     Discovery Responses from the County of Kern in response to Plaintiff's Special Interrogatories.

      3.     Deposition of Jason Balasis and Exhibits attached thereto.

      4.     Deposition of Juanita Buck and Exhibits attached thereto.

      5.     Deposition of Christy Chacon and Exhibits attached thereto.

      6.     Deposition of Maria Chavez and Exhibits attached thereto.

      7.     Deposition of Osvaldo Chavez and Exhibits attached thereto.

      8.     Deposition of William Tyson Davis, Jr., and Exhibits attached thereto.

      9.     Deposition of Laura Dodge and Exhibits attached thereto.

      10.     Deposition of Alejandra Gutierrez and Exhibits attached thereto.

      11.     Deposition of Sgt. Douglas Jauch and Exhibits attached thereto.

      12.     Deposition of Dave Kessler and Exhibits attached thereto.

      13.     Deposition of Laura Lopez and Exhibits attached thereto.

      14.     Deposition of Regina Mancera and Exhibits attached thereto.

15.    Deposition of Dionisio Mitchell and Exhibits attached thereto.

16.    Deposition of Yesenia Ocampo and Exhibits attached thereto.

17.    Deposition of Mark Riehle and Exhibits attached thereto.

18.    Deposition of Deputy Tommy Jared Robins and Exhibits attached thereto.

19.    Deposition of Adriana Salinas and Exhibits attached thereto.

20.    Deposition of Sgt. William Smallwood, III and Exhibits attached thereto.

21.    Deposition of Deputy Jeremy Storar and Exhibits attached thereto.

22.    Deposition of James Waterman and Exhibits attached thereto.

23.    Deposition of John Gardiner, Ph.D and Exhibits attached thereto.

24.    Deposition of Syed Naqvi, M.D. and Exhibits attached thereto.

25.    Deposition of Donald Perry Van Blaricom and Exhibits attached thereto.

26.    Deposition of David Posey, M.D. and Exhibits attached thereto.

27.    Deposition of Joseph Callanan and Exhibits attached thereto.

28.    Deposition of Gaylan Roy Warren and Exhibits attached thereto.

39.    Deposition of Kris Monhandie and Exhibits attached thereto.

**Defendant anticipates offering the following discovery documents at trial**:

1.    Plaintiff's responses to requests for admissions 1, 3, 4, 5, 6, 8, 10, 11, 12, 14, 17, 18, 19, 21, 22, 24, 25, 27, 32, 33, 34, 35, 36, 37, 39, 40, 43.

If either party wishes to rely upon discovery documents or deposition transcripts at trial, they SHALL lodge the original discovery requests and responses and/or the original or certified copy of the pertinent transcripts, no later than **February 6, 2015**.  If the proffering party wishes the jury to view the discovery document, only the request and response at issue may be visible on the page(s) and all extraneous material must be redacted or the request and the response re-typed on a clean page.[2]

**M.    FURTHER DISCOVERY OR MOTIONS**

No further discovery is sought by either party.

**N.    MOTIONS IN LIMINE**

---

[2] Counsel should have at least two extra copies of the redacted version for review by the Court and opposing counsel before publication is allowed

1    Any party may file motions in limine.  The purpose of a motion in limine is to establish in

2  advance of the trial that certain evidence should not be offered at trial.  "Although the Federal Rules of

3  Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the

4  district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38,

5  40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997).

6  The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the

7  moving party establishes that the evidence clearly is not admissible for any valid purpose.  *Id.*

8    **In advance of filing any motion in limine, counsel SHALL meet and confer to determine**

9  **whether they can resolve any disputes and avoid filing motions in limine.  Along with their**

10  **motions in limine, the parties SHALL file a certification demonstrating counsel have in good**

11  **faith met and conferred and attempted to resolve the dispute.   Failure to provide the**

12  **certification may result in the Court refusing to entertain the motion.**

13    All motions in limine must be served on the other party and filed with the Court by **January 9,**

14  **2015.**  The motion must clearly identify the nature of the evidence that the moving party seeks to

15  prohibit the other side from offering at trial. Any opposition to the motion must be served on the other

16  party, and filed with the Court by **January 23, 2015**. The Court sets a hearing on the motions in limine

17  on **February 3, 2015** at 1:30 p.m.  Appearances via Courtcall are authorized.

18    The parties are reminded they may still object to the introduction of evidence during trial.

19  **O.    STIPULATIONS**

20    The parties have not agreed upon any stipulations at this time.

21  **P.    AMENDMENTS/ DISMISSALS**

22    None at this time.

23  **Q.    SETTLEMENT NEGOTIATIONS**

24    The parties report they "are exploring mediation with a local mediator." (Doc. 48 at 13.)

25  **R.    AGREED STATEMENT**

26    None

27  **S.    SEPARATE TRIAL OF ISSUES**

28    Because the issue of *Monell* liability is not implicated unless there is a determination of

19

individual liability, in the first phase of the trial, the Court will try the issue of the individuals' liability, including whether punitive damages should be awarded.  If Plaintiff receives a favorable verdict, in the second phase, the Court will try the *Monell* claim and, if needed, the amount of punitive damages that should be imposed on the individuals.

**T.   EXPERTS**

None.

**U.   ATTORNEYS' FEES**

If successful at trial, Plaintiff will seek an award of attorneys' fees.

**V.   TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **February 17, 2015**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the United States Courthouse, 510 19th Street, Bakersfield, California.  Trial is expected to last no longer than 10-14 days.

**W.   TRIAL PREPARATION AND SUBMISSIONS**

**1.    Trial Briefs**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **February 6, 2015.**

**2.    Jury Voir Dire**

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **February 6, 2015.**

**3.    Statement of the Case**

The parties **SHALL** file a joint non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **February 6, 2015.**

**4.    Jury Instructions & Verdict Form**

The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than **January 9, 2015.**  The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than **January 23, 2015**.  At the conference, the parties **SHALL** attempt to reach agreement on jury

20

instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **February 6, 2015**, and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than **February 6, 2015,** and identify such as the disputed jury instructions and verdict forms.  At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction.  Each instruction SHALL be numbered.

**W.      OBJECTIONS TO PRETRIAL ORDER**

Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

**X.      MISCELLANEOUS MATTERS**

None.

///
///
///
///
///
///

21

**Y.   COMPLIANCE**

Strict compliance with this order and its requirements is mandatory.  All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

IT IS SO ORDERED.

Dated:   **December 10, 2014**                     **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE